IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LENA STOUT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-22-05-GLJ |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Lena Stout requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was forty-eight years old at the time of the most recent administrative hearing. (Tr. 74, 293). She completed high school and previously worked as a child monitor and teacher's aide, as well as holding a composite cafeteria job comprised of bookkeeper and kitchen helper. (Tr. 33, 338). Claimant alleges she has been unable to work since September 29, 2018, due to a broken back. (Tr. 337).

### Procedural History

On April 25, 2019, Claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Carolyn Keen held an administrative hearing and determined that Claimant was not disabled in a written decision dated December 8, 2020 (Tr. 134-146). The Appeals Council remanded the decision on March 4, 2021, with instructions for the ALJ to properly account for a nurse practitioner opinion she had previously found "rather persuasive." (Tr. 154-157). On remand, ALJ Keen held a second administrative hearing and again determined that Claimant was not disabled in a written decision dated August 4, 2021 (Tr. 20-35). The Appeals Council then denied review, so ALJ Keen's 2021 decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. At step two, the ALJ found that Claimant had the severe impairments of degenerative disc disease of the lumbar spine, Chiari malformation, idiopathic intracranial hypertension, and obesity, as well as the nonevere impairment of a corneal abrasion and the medically determinable impairment of generalized anxiety disorder. (Tr. 23-25). As pertinent to this appeal, the ALJ found Claimant's headaches were linked to her idiopathic intracranial hypertension, and not a separate impairment. (Tr. 24). Next, she found that Claimant's impairments did not meet a listing and her mental impairments caused no more than mild limitations. (Tr. 25-27). At step four, she found that Claimant retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she can only occasionally climb ramps/stairs, stoop, kneel, crouch, or crawl; never climb ladders/ropes/scaffolds, or work at unprotected heights; and she cannot work with bright or flickering lights that might be experienced in welding or cutting metals-type jobs. (Tr. 27). The ALJ then determined that although Claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the economy, *e.g.*, final assembler, jeweler preparer, and compact assembler. (Tr. 33-35).

## Review

The claimant's sole contention on appeal is that the ALJ failed to properly account for her headaches in formulating the RFC. The Court disagrees, and the decision of the Commissioner should therefore be affirmed.

The relevant medical evidence reflected treatment notes from Lane Family Clinic in Wright City, Oklahoma that include reports of headaches both prior to and after Claimant's alleged onset date. (Tr. 490-506, 560-575). In August 2019, Claimant reported continued headaches, and the following month she reported both a sister and a niece had experienced brain aneurysms, making her concerned it was genetic. (Tr. 560-563). At a follow-up appointment a few weeks later, she again reported daily headaches and was waiting on an MRI. (Tr. 566).

On October 1, 2019, Claimant underwent an MRI of the brain, which revealed cerebellur tonsillar ectopia of approximately six mm concerning for Chiari malformation, thinning of the pituitary gland, no evidence of acute intracranial disease, and small-to-moderate right and minimal left mastoid air cell fluid. (Tr. 671).

On November 20, 2019, Claimant saw a neurosurgeon, Dr. Edward Kerr, for her headaches. Claimant reported that her headaches had been present two to three days a month but were present almost daily by that time, with no clear aggravating factors. However, she also identified light and noise as triggers, with relief from sitting in a dark, quiet room. (Tr. 630). Following the assessment and review of Claimant's MRI, Dr. Kerr opined that her symptoms were not typical for Chiari-malformation-associated headaches, concluding that the findings were more consistent with idiopathic intracranial hypertension. (Tr. 635, 630-657). He recommended weight loss of approximately 100 pounds, and that she consult with a headache neurologist. (Tr. 635). He discharged her following that singular appointment. (Tr. 635).

By December 2019, Claimant had been diagnosed with Chiari malformation, and was reporting headaches daily that were not relieved by her prescribed medication. (Tr. 621). She reported she had been told to lose weight to help with her headaches, and requested a referral for bariatric surgery. (Tr. 621). Claimant then returned to Lane Family Clinic in September 2020, at which time she denied headaches and did so again in December 2021 at the Clinic and June 2021 at McCurtain Memorial Hospital (at which time she was diagnosed with hypertension, hypercholesterolemia, and low back pain). (Tr. 677-707).

At the original administrative hearing on October 5, 2020, Claimant testified that one doctor had advised her that losing weight would probably help with her headaches, and that she had been deemed too overweight for surgery related to Chiari malformation. (Tr. 53-54). In response to further questioning, Claimant testified that she needs medication for her headaches approximately four to five days per week, and that her medication generally has little effect on them. (Tr. 57). She explained that when the prescription medication was not effective after a few hours, she will take Ibuprofen and lie down. (Tr. 57-58). She stated that her doctors had changed her medication around ten months previous and that it had helped at first but over time became less effective. (Tr. 58). Additionally, she testified that strong smells were a trigger for her headaches. (Tr. 58-59). During a second administrative hearing on June 28, 2021, following a remand from the Appeals Council, Claimant testified that her headaches were "more frequent every day," sometimes cause dizziness, and were made worse by heat, light, and sound. (Tr. 89-90). For relief, she stated that she takes medication and will lie down. (Tr. 90).

In her written opinion at step four, the ALJ summarized the claimant's hearing testimony as well as the medical evidence in the record. In particular, the ALJ noted claimant's hearing testimony that loud noises and lights can trigger a headache. (Tr. 28). The ALJ summarized most of the objective test results related to the claimant's degenerative disc disease and Chiari malformation (Tr. 29-30), specifically noting the finding by a neurologist that claimant's headaches were not associated with her Chiari malformation but due to idiopathic intracranial hypertension (Tr. 29). The ALJ found that the MRI of Claimant's brain supported her diagnoses of Chiari malformation and idiopathic intracranial hypertension and warranted the need for her to avoid bright and flickering lights based on the likelihood that these lights would trigger a headache. (Tr. 30). The ALJ further found that Claimant's report of the frequency and intensity of her headaches was inconsistent with the medical record. The ALJ pointed out that treatment notes reflected Claimant's reports of worsening headaches in late 2019, which resulted in a medication adjustment, but that in 2020 she did not report worsening headaches at a July appointment and reported no headaches at all in September 2020. Then, at the October 2020 administrative hearing, she reported headaches four to five days per week. (Tr. 31). The ALJ ultimately concluded Claimant was not disabled because there was work she could perform. (Tr. 33-35).

The claimant asserts that the ALJ's RFC is unsupported by substantial evidence because he failed to properly account for the consistency of her subjective statements with regard to her headaches. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2]  Tenth Circuit precedent is in alignment but characterizes the evaluation as a three-part test.  *See, e.g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[3]  As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations.  *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8.  An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole.

---

[2] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[3] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna*) and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

*See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

Claimant contends that the ALJ's limitation from work "with bright or flickering lights that might be experienced in welding or cutting metals-type jobs" is insufficient to account for her own testimony that she needed a dark room to work in, as opposed to only avoiding bright or flickering lights, as well as a limitation based on noise. She further contends that the ALJ's discussion of the evidence about her headaches, *see* Tr. 31, related to frequency of headaches and not the triggers. Upon review of the record, the Court finds that the ALJ set out the appropriate analysis and cited evidence supporting her reasons for finding that Claimant's subjective complaints as to her headaches were not believable to the extent alleged, *i.e.*, she gave clear and specific reasons that were specifically linked to the evidence in the record. In particular, the ALJ noted inconsistencies between Claimant's subjective statements and the evidence of record, including evidence that although claimant had frequent and worsening headaches in 2019, they did not worsen in 2020 and perhaps may have abated. While Claimant contends that the frequency is unrelated to triggers, she has pointed to no evidence in the record, other than her own testimony, to support more restrictive limitations than the ALJ assigned in the RFC. *See Giuliano v. Colvin*, 577 Fed. Appx. 859, 863 (10th Cir. 2014) ("The ALJ had ample evidence to support a determination

that Ms. Giuliano could work despite her experience with migraine headaches. If anything, the RFC gave her the benefit of the doubt by excluding work that exposed her to environments that she claimed were *most likely* to trigger the migraines. The ALJ did not err in assessing Ms. Giuliano's RFC.") (emphasis added). There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and her evaluation is entitled to deference. *See Casias*, 933 F.2d at 801. Because the ALJ's decision is "reasonably discerned," the Court declines to remand. *Garland v. Ming Dai*, _ U.S. _, 141 S. Ct. 1669, 1679 (2021) (An agency is not required to "follow a particular formula or incant 'magic words' like 'incredible' or 'rebutted' to overcome [a] presumption of credibility on appeal. To the contrary, a reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.' So long as the [Agency's] reasons for rejecting [a person's] credibility are reasonably discernible, the agency must be understood as having rebutted the presumption of credibility. It need not use any particular words to do so. And, once more, a reviewing court must uphold that decision unless a reasonable adjudicator would have been compelled to reach a different conclusion.") (quoting*, inter alia*, *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974)).

The ALJ noted the medical record available in this case, gave reasons for her RFC determination, and ultimately found that Claimant was not disabled. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each

requirement of an exertional work level before [he] can determine RFC within that category.'") (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).  This was "well within the province of the ALJ."  *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946).  Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence.  The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 30th day of June, 2023.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**